# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SHAMIEKE D. PUGH                           Case No.:
c/o Walton + Brown, LLP.
395 E. Broad St., Suite 200
Columbus, OH 43215                          Judge:

And

MAURICE D. LEE,
c/o Walton + Brown, LLP.
395 E. Broad St., Suite 200
Columbus, OH 43215

       *Plaintiffs*,

v.

RONALD ERDOS
c/o Southern Ohio Correctional Facility
1724 St. Rt. 728
Lucasville, OH 45699

And

OFFICER FAYE
c/o Southern Ohio Correctional Facility
1724 St. Rt. 728
Lucasville, OH 45699

And

OFFICER DALTON
c/o Southern Ohio Correctional Facility
1724 St. Rt. 728
Lucasville, OH 45699

1

And

JOHN DOE SERGEANT
c/o Southern Ohio Correctional Facility
1724 St. Rt. 728
Lucasville, OH 45699

And

JOHN DOE HEALTH CARE PROVIDER
(Name Unknown)
(Address Unknown)

And

JOHN DOE NURSES
(Name Unknown)
(Address Unknown)

And

JOHN DOE CORRECTIONAL
OFFICERS
c/o Southern Ohio Correctional Facility
1724 St. Rt. 728
Lucasville, OH 45699

      *Defendants*.

_____

| | |
|---|---|
| Sean L. Walton, Esq. (#0088401) | Solomon M. Radner, Esq. |
| WALTON + BROWN, LLP | (*pro hac vice to be applied for*) |
| Attorney for Plaintiffs | EXCOLO LAW, PLLC |
| 395 E. Broad St., Suite 200 | Attorney for Plaintiffs |
| Columbus, OH 43215 | 26700 Lahser Road, Suite 401 |
| (614) 636-3476 | Southfield, MI 48033 |
| | (866) 939-2656 |

Joseph D. Lento, Esquire
(*pro hac vice to be applied for*)
Optimum Law Group, P.C.
Attorney for Plaintiffs
1500 Market Street - 12th Flr, East Tower
Philadelphia, PA 19102
(267) 833-0200
_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COME Plaintiffs, SHAMIEKE D. PUGH and MAURICE D. LEE, by and through their attorneys, complaining of Defendants, and respectfully alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil rights action in which the Plaintiffs seek relief for the violation of rights secured by 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments.

2. Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

3. The events that give rise to this lawsuit took place in the Southern Ohio Correctional Facility.

4. Venue is appropriate in the Southern District of Ohio pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of Lucasville, County of Scioto, State of Ohio.

## PARTIES

5. Plaintiff, Shamieke D. Pugh ("Plaintiffs" or "Mr. Pugh"), is a resident of the State of Ohio. Plaintiff, at all times relevant to this complaint, was incarcerated

in the Southern Ohio Correctional Facility. He was released from custody on December 27, 2018, and currently resides in Delaware County, Ohio.

6.    Plaintiff, Maurice D. Lee ("Plaintiffs" or "Mr. Lee"), is a resident of the State of Ohio. Plaintiff, at all times relevant to this complaint, was incarcerated in the Southern Ohio Correctional Facility. He is currently housed in the Madison Correctional Institution in Madison County, Ohio.

7.    Defendant, Officer Faye ("Faye"), is employed by the State of Ohio as a correctional officer in the Southern Ohio Correctional Facility, and was acting under the color of law.

8.    Defendant, Officer Dalton ("Dalton"), is employed by the State of Ohio as a correctional officer in the Southern Ohio Correctional Facility, and was acting under the color of law.

9.    Defendant, John Doe Sergeant ("Sergeant"), is employed by the State of Ohio as a supervisory correctional officer in the Southern Ohio Correctional Facility, and was acting under the color of law. John Doe Sergeant was involved with Plaintiffs in June of 2017.  Defendant John Doe cannot be fully identified by Plaintiffs at this time.

10.    Defendant, John Doe Health Care Provider ("Health Care"), is employed by the State of Ohio as a health care provider in the Southern Ohio Correctional Facility, and was acting under the color of law. John Doe Health Care Provider was involved in Plaintiffs' medical treatment in June of 2018. Defendant John Doe Health Care Provider cannot be fully identified by Plaintiffs at this time.

4

11. Defendant, John Doe Nurses ("Nurses"), are employed by the State of Ohio as nurses in the Southern Ohio Correctional Facility, and were acting under the color of law. John Doe Nurses were involved with Plaintiffs in November of 2018. Defendant John Doe Nurses cannot be fully identified by Plaintiffs at this time.

12. Defendant, John Doe Correctional Officers ("John Doe Officer"), are employed by the State of Ohio as correctional officers in the Southern Ohio Correctional Facility, and was acting under the color of law. John Doe Correctional Officers were involved with Plaintiffs in November of 2018. Defendant John Doe Correctional Officers cannot be fully identified by Plaintiffs at this time.

13. Defendant, Ronald Erdos ("Warden"), is the Warden of Southern Ohio Correctional Facility. Defendant Warden was deliberately indifferent to the safety of inmates and is being sued in his individual capacity.

14. All complained of actions and inactions of Defendants were done maliciously, recklessly, carelessly, unlawfully, knowingly, intentionally, wantonly, purposely, purposefully, through deliberate indifference and gross negligence and without any objective reasonableness.

## STATEMENT OF FACTS

### June 2017 Incident

15. On June 4, 2017, Mr. Pugh and Mr. Lee were permitted to have indoor recreational time at Southern Ohio Correctional Facility.

16. Before Plaintiffs could proceed to their indoor recreational time, they were both required to be stripped searched by the Defendant Officers.

5

17. This strip search was the normal procedure for how inmates were taken to recreational time at the Southern Ohio Correctional Facility in that housing unit.

18. This strip search, as performed on Mr. Pugh and Mr. Lee on June 4, 2017 and throughout their time at the Southern Ohio Correctional Facility went as follows: inmates are to strip naked when the guard approaches, then the inmates are to be searched, hand-cuffed and ankle-shackled before taken out of their cells.

19. Mr. Pugh and Mr. Lee were subjected to this search process, and were then individually walked out of their cells and handcuffed to a table along with two other inmates.

20. The handcuffs permitted only a few inches of hand movement to be able to play card games.

21. Mr. Pugh, Mr. Lee and the two other individual inmates were peacefully playing spades together, while all hand-cuffed to the table.

22. Mr. Pugh, Mr. Lee and the other two individuals are all African American males and they were each stripped search before they were shackled to the table.

23. While Mr. Pugh and Mr. Lee were playing cards, they heard the correctional officers laughing, but did not know the reason for the laughter.

24. Two correctional officers, Defendant Faye and Defendant Dalton, then walked over to another inmate, Gregory Reinke, and talked to him for about ten minutes while Reinke was in his cell.

25.     Gregory Reinke is a Caucasian inmate, and Defendants Faye and Dalton are also Caucasian. Upon information and belief, Gregory Reinke is a known white supremacist and member of the Aryan Brotherhood gang.

26.     Defendant Officers then took Reinke out of his cell and placed him at a table next to the table Mr. Pugh, Mr. Lee and the other two African American inmates were playing cards.

27.     Upon information and belief, Defendant Officers did not perform the herein described search of Gregory Reinke before placing him at the table next to Mr. Pugh. In fact, Defendant Officers gave Reinke either a key of some other device with which Reinke could quickly unlock hand-cuffs, or alternatively, Defendant Officers knew or should have known that Reinke had such a device on him.

28.     Mr. Pugh and Mr. Lee noticed that the Defendant Officers had not strip searched Reinke, and this made Plaintiffs fear for their safety, as though they were targets of abuse by Defendant Officers and their cronies, such as Reinke.

29.     Upon information and belief, Defendant Officers knew or should have known that Reinke had at least one large knife on his person, or alternatively Defendant Officers provided this knife to Reinke.

30.     After some time, estimated at about 20-30 minutes, Reinke unlocked his handcuffs and pulled an 8-inch blade out of his sock and began to violently stab and attack Mr. Pugh, Mr. Lee and the other inmates.

31.     Reinke also had a 12-inch blade in his sock.

32.     Mr. Pugh, Mr. Lee and the other inmates were hand-cuffed to the table and could not defend themselves.

7

33.    Reinke continued to stab them.

34.    Mr. Pugh was stabbed at least ten times by Reinke.

35.    Mr. Lee was stabbed at least twice by Reinke.

36.    Defendant Officers were standing ten feet away behind a locked door when the stabbing took place.

37.    Defendant Officers saw the stabbing but did not immediately respond.

38.    In fact, Defendant Officers laughed as Mr. Pugh, Mr. Lee, and the other inmates were stabbed by Reinke.

39.    Defendant Officers stood and watched while Mr. Pugh, Mr. Lee, and the other inmates were repeatedly stabbed.

40.    Eventually, one of the victims was able to pull his hands out of the hand-cuffs after which he tackled Reinke to the ground.

41.    Only after Reinke was tackled, Defendant Officers finally decided to intervene.

42.    Defendant Officers used pepper spray on the inmate who tackled Reinke in self-defense.

43.    Defendant Officers did not use pepper spray on Reinke.

44.    Afterwards, Mr. Pugh, Mr. Lee, and the other individuals were bleeding out with severe injuries.

45.    For the next ten to fifteen minutes, neither Defendant Faye nor Defendant Dalton provided any first aid. Instead they just stood and watched Mr. Pugh, Mr. Lee, and the others bleed profusely.

8

46. Defendant John Doe Sergeant was present after the stabbing and did not provide any first aid or direct any other else on the scene to provide first aid, despite the fact the Mr. Pugh, Mr. Lee and the others had been violently stabbed and were visibly bleeding profusely.

47. At first, Defendant John Doe Sergeant attempted to prevent and deny Plaintiffs from receiving any medical attention.

48. Defendant John Doe Sergeant and Defendant Faye and Dalton even said to each other "we should just let them die."

49. Eventually, at least ten minutes later, the nurses from health care arrived and administered first aid.

50. As a result of the stab wounds, Mr. Pugh was required to spend two weeks in the Ohio State University Hospital.

51. Mr. Lee was also hospitalized for the injuries he suffered as a result of the stabbing.

52. When released from the hospital, Mr. Pugh asked officials at Southern Ohio Correctional Facility to transfer him to a different facility because of his fear of the correctional officers. This request was denied.

53. Upon information and belief, Defendant Faye, Defendant Dalton, and Gregory Reinke worked together to cause harm to Plaintiffs and the other individuals.

54. Upon information and belief, Gregory Reinke was a known threat of violence in the prison.

55.     Upon information and belief, Gregory Reinke was known by Defendant Warden and the staff at Southern Ohio Correctional Facility to carry shanks in violation of prison rules. Upon information and belief, Reinke was caught with shanks and/or knives on at least five different occasions.

56.     Upon information and belief, Gregory Reinke has a history of misconduct and violence.

57.     Upon information and belief, Gregory Reinke had stabbed and attempted to stab inmates on at least two other occasions prior to the June 4, 2017 incident.

58.     Upon information and belief, Defendant Warden and staff at Southern Ohio Correctional Facility knew Gregory Reinke was a threat to the safety of others in the prison, yet did nothing to prevent this violence. Their callous and deliberate indifference to this known threat directly caused the complained-of harm to take place. Further, Defendant Warden failed to train and supervise his subordinates to such a degree that the lack of training and supervision demonstrates deliberate indifference to the plaintiffs. Through his callous and deliberate indifference towards his subordinates, he at least implicitly approved, authorized or acquiesced in the unconstitutional conduct of his subordinates.

59.     Plaintiffs suffered harm as a direct result of Defendants actions and inactions.

### June 2018 Incident

60.     In June of 2018, Mr. Pugh began experiencing chest pains.

61.    Mr. Pugh requested medical treatment from the Defendant John Doe Nurses at Southern Ohio Correctional Facility.

62.    Defendant John Doe Nurses told Mr. Pugh that he was fine and would not provide him with any medical treatment for his chest pain or constipation.

63.    Defendant John Doe Nurses took his blood pressure and it was 159/101.

64.    Defendant John Doe Nurses did an EKG and told Mr. Pugh that everything seemed normal and that he was fine, despite his abnormal blood pressure.

65.    Mr. Pugh told the nurses that his chest still hurt.

66.    Defendant John Doe Nurses accused Mr. Pugh of faking it and lying about his conditions.

67.    Defendant John Doe Correctional Officers were in the infirmary with Mr. Pugh and the nurses.

68.    Defendant John Doe Nurses then whispered to Defendant Officers and said, "I'll cover for ya'll" and "We're going to leave the room."

69.    Defendant Officers then looked at Mr. Pugh and said "you're lying."

70.    Immediately after making this statement, one of Defendant John Doe Correctional Officers began to punch Mr. Pugh.

71.    Other Defendant John Doe Officers then joined in and kicked, punched, and stomped on Mr. Pugh.

72.    Mr. Pugh was handcuffed and ankle shackled while Defendant Officers attacked him.

73.    Defendant Officers then stated "don't fall out" and left.

74.   Mr. Pugh requested medical attention for his medical conditions and the newly inflicted wounds from Defendant Officers.

75.   Mr. Pugh was denied medical attention and treatment.

76.   One month later, on December 27, 2018, Mr. Pugh was released from Southern Ohio Correctional Facility.

77.   Plaintiff Pugh suffered harm as a direct result of Defendants actions and inactions.

**COUNT I**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Eighth Amendment – Failure to Protect)**

**(Against Defendants Faye, Dalton, and Warden)**

78.   Plaintiffs incorporate herein all prior allegations.

79.   At all times relevant herein, Plaintiffs had a clearly established right to protection from known serious risks to great bodily harm under the Eighth Amendment and Fourteenth Amendments to the United States Constitution.

80.   At all times relevant, Plaintiffs had a clearly established right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his great risks of bodily harm.

81.   At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

82.   Defendant Faye and Defendant Dalton stood by and watched while Mr. Pugh and Mr. Lee were stabbed by another inmate.

83.    Defendant Faye, Defendant Dalton and Defendant Warden all knew that Gregory Reinke was dangerous and had stabbed inmates before, yet still permitted him to be in general population during recreational time.

84.    Defendant Faye and Defendant Dalton neglected to properly search the stabber before permitting him to be near other inmates during recreational time despite knowledge of his misconduct.

85.    Defendant Faye and Defendant Dalton saw Plaintiffs being stabbed but did not immediately intervene to end the violence.

86.    Defendant Faye and Defendant Dalton owed a duty to protect Plaintiffs from both the known risk that was Gregory Reinke, a known violent threat.

87.    Defendant Faye and Defendant Dalton exhibited deliberate indifference to Plaintiffs' clearly established rights when they intentionally did not strip search Reinke, despite that they knew they were required to, and that they did in fact strip searched other inmates on that day, and they had knowledge that Reinke had been caught with homemade weapons and had stabbed inmates on other occasions.

88.    Defendant Faye and Defendant Dalton owed a duty to immediately intervene and protect Plaintiffs when Reinke was violently stabbing them.

89.    Defendant Fate and Defendant Dalton exhibited deliberate indifference to Plaintiffs' clearly established rights when they did not immediately intervene to protect and instead waited until another prisoner was finally able to pull free and escape from his handcuffs and tackle the stabber and end the violence.

90. A supervisor in individually liable under 42 U.S.C. § 1983 if the supervisor implicitly authorized, approved or knowingly acquiesced in unconstitutional conduct, or if he directly participated in the unlawful conduct.

91. Defendant Warden, supervisor of the prison, owed Plaintiffs a duty to act and not be deliberately indifferent to known serious risks of physical harm against inmates. His neglect to do anything to keep Gregory Reinke away from other inmates despite knowledge of several previous instances of stabbing and possession of shanks, violated Plaintiffs' constitutionally protected right to be free from bodily harm.

92. As a result of Defendant Officers willful failure to protect Plaintiffs, they were severely injured and hospitalized for their injuries.

93. Defendant Officers actions and inactions constituted deliberate indifference to Plaintiffs' right to be free from serious risks of bodily harm in violation of 42 U.S.C. § 1983 and his rights under the Eighth Amendment to the United States constitution to be free from cruel and unusual punishment.

94. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for their physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Eighth Amendment – Deliberate Indifference to Serious Medical Needs)

## (Against Defendants Faye, Dalton, and John Doe Sergeant)

95. Plaintiffs incorporate herein all prior allegations.

14

96.     At all times relevant, Plaintiffs had a clearly established right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his known serious medical needs.

97.     At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

98.     At all times relevant, Defendants knew that Plaintiffs had serious medical needs where they had been stabbed several times and were visibly bleeding out.

99.     Defendant Officers were on the scene after Plaintiffs had been stabbed but provided no first aid or medical treatment whatsoever.

100.    Defendant John Doe Sergeant initially denied and attempted to prevent Plaintiffs from receiving medical attention.

101.    Defendant Officers even stated that "we should let them die," instead of providing first aid.

102.    Defendant Officers actions and inactions constituted deliberate indifference to Plaintiffs' serious medical need in violation of 42 U.S.C. § 1983 and his rights under the Eighth Amendment to the United States constitution to be free from cruel and unusual punishment.

103.    As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for their physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Supervisory Individual Liability)**

**(Against Defendant John Doe Sergeant)**

104.  Plaintiffs incorporate herein all prior factual allegations.

105.  A supervisor is individually liable under 42 U.S.C § 1983 if the supervisor implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate or directly participated.

106.  At all times relevant to this complaint, Defendant John Doe Sergeant was a supervisor acting under the color of law in his/her actions and omissions and at least implicitly approved, authorized or acquiesced in the unconstitutional conduct exhibited by his/her subordinate defendants named herein. All of the individually named Defendants were acting under the direct supervision of Defendant John Doe. Defendant John Doe established policies for his/her subordinates to follow which permitted the Defendant Officers to carry out the constitutional violations described herein.

107.  At all times relevant to this complaint, Defendant John Doe Sergeant was responsible for the supervision, discipline, and control of Defendants Faye and Dalton, yet he at least implicitly approved, authorized, or acquiesced his subordinates' misconduct.

108.  As described herein, Defendant John Doe Sergeant had knowledge that Plaintiffs were in need of urgent medical care when he witnessed Plaintiffs bleeding profusely with several stab wounds, each.

109. As described herein, Defendants Faye, Dalton and John Doe Sergeant did not provide any medical care despite the critical condition of the inmate Plaintiffs.

110. As described herein, John Doe Sergeant initially prevented and denied Plaintiffs from receiving any medical attention for his stab wounds.

111. As described herein, Defendant Officers said they "should just let them die."

112. As a result of Defendant John Doe Sergeant's actions and inactions, he/she exhibited deliberate indifference to Plaintiffs' constitutional rights in violation of 42 U.S.C. § 1983 and their rights under the Eighth and Fourteenth Amendments to the United States Constitution.

113. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for their physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT IV**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourteenth Amendment – Equal Protection)**

**(Against Defendants Faye and Dalton)**

114. Plaintiffs incorporate herein all prior allegations.

115. At all times relevant, Plaintiffs had a clearly established right to be free from arbitrary discrimination and discrimination based on race pursuant to the Fourteenth Amendment to the United States Constitution.

116.  At all times relevant, Plaintiffs had a clearly established right to be free from discrimination and differential treatment based on his race pursuant to the Fourteenth Amendment to the United States Constitution.

117.  At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

118.  Defendant Officers stripped searched Mr. Pugh, Mr. Lee, and the other African American inmates before they could attend recreational time.

119.  Defendant Officers did not strip search the Caucasian inmate before permitting him to attend recreational time despite that he was a known white supremacist and member of the Aryan Brotherhood gang, who had been caught with shanks and had stabbed inmates in the past.

120.  Defendant Officers handcuffed Mr. Pugh, Mr. Lee, and the other African American inmates to the table and did not provide them with access to remove their cuffs.

121.  Defendant Officers did not handcuff the Caucasian inmate and/or provided him with access to remove his cuffs.

122.  Defendant Officers acted with intent to cause harm to Plaintiffs because they are African-American.

123.  Defendant Officers actions and inactions constitute impermissible differential treatment based on the impermissible classification of race in violation of 42 U.S.C § 1983 and the Fourteenth Amendment to the United States Constitution.

124. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for their physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Conspiracy to Deprive of Rights)

**(Against Defendants Faye, Dalton and John Doe Sergeant)**

125. Plaintiffs incorporate herein all prior allegations.

126. At all times relevant, Plaintiffs had a clearly established right to be free from conspiracy to violate their constitutional rights to be free from bodily harm and his right to medical care for serious medical needs.

127. At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

128. Defendant Faye and Defendant Dalton agreed not to strip search a person who constituted a well-known threat of violence and had been caught with shanks and knives of previous occasions.

129. Defendant Faye and Defendant Dalton agreed to not handcuff a person who constituted a well-known threat of violence and/or provided him access to escape his handcuffs.

130. Defendant Faye and Defendant Dalton agreed to stay behind the locked door and watch one inmate stab other inmates repeatedly with an 8-inch blade, despite their knowledge that the inmates were helpless and could not defend themselves since Defendant Officers had handcuffed them to the table, shackled

their ankles, and strip searched them to prevent them from having weapons to defend themselves.

131.  Defendant Faye and Defendant Dalton agreed to allow Gregory Reinke to cause harm to Plaintiffs.

132.  Defendant Faye, Defendant Dalton, and Defendant John Doe Sergeant agreed to not provide first aid to Plaintiffs despite their knowledge that he had been stabbed and was bleeding profusely.

133.  Defendant Faye, Defendant Dalton, and Defendant John Doe Sergeant demonstrated their agreement not to provide first aid when they stated to each other that "we should just let them die."

134.  Defendant Officers actions and inactions constitute an impermissible conspiracy to deprive an individual of their rights to be free from bodily harm in violation of 42 U.S.C § 1983 and the Fourteenth Amendment to the United States Constitution.

135.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for their physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Eighth Amendment – Deliberate Indifference to Serious Medical Needs)

### (Pugh Against Defendant John Doe Nurses)

136.  Plaintiffs incorporate herein all prior allegations.

137.  At all times relevant, Mr. Pugh had a clearly established right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his known serious medical needs.

138.  At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

139.  In June of 2018, Mr. Pugh presented to health care with severe chest pains and constipation.

140.  At all times relevant, Defendant knew that Mr. Pugh had a serious medical need where he had requested medical attention for severe chest pains.

141.  Defendant Nurses told Mr. Pugh that his EKG was normal and that he was lying and faking it. However, his blood pressure was abnormal at 159/101.

142.  Mr. Pugh denied that he was lying or faking it and told them his chest still hurt.

143.  Defendants denied Mr. Pugh treatment for his chest pains.

144.  Defendants actions and inactions constituted deliberate indifference to Mr. Pugh's serious medical need in violation of 42 U.S.C. § 1983 and his rights under the Eighth Amendment to the United States constitution to be free from cruel and unusual punishment and deliberate indifference to medical needs.

145.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff Pugh was harmed and suffered damages for his physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT VII**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Eighth Amendment – Cruel and Unusual Punishment)**

**(Plaintiff Pugh, Only, Against Defendants John Doe Corrections Officers)**

146. Plaintiffs incorporate herein all prior allegations.

147. At all times relevant, Mr. Pugh had a clearly established right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.

148. At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

149. In November of 2018, Mr. Pugh was in the infirmary complaining of serious chest pains.

150. Defendant John Doe Nurses accused Mr. Pugh of faking his injuries and told Defendant John Doe Corrections Officers that they would cover for them. Defendant John Doe Nurses then left the infirmary.

151. Defendant John Doe Corrections Officers then entered and physically assaulted Mr. Pugh while he was handcuffed and ankle shackled in the infirmary.

152. Defendant Officers kicked, punched, and stomped Plaintiffs without any legal basis.

153. Defendant Officers actions constituted cruel and unusual punishment in violation of 42 U.S.C. § 1983 and his rights under the Eighth Amendment.

154. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff Pugh was harmed and suffered damages for his physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

**COUNT VIII**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**

**(Eighth & Fourteenth Amendment – Failure to Intervene / Protect)**

**(Against Defendants John Doe Corrections Officers, John Doe Nurses)**

155.  Plaintiffs incorporate herein all prior allegations.

156.  At all times relevant, Plaintiffs had a clearly established right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment and deliberate indifference to medical needs and risks of harm.

157.  At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

158.  Each of these Defendants owed a duty to intervene / protect when the other Defendants were assaulting Plaintiffs.

159.  Each of these Defendants were present at the scene in the infirmary and had the opportunity and means to prevent / stop the unlawful physical assault of Plaintiffs.

160.  Defendant John Doe Officers had the opportunity to stop each other from assaulting Plaintiffs but chose to either stand by or join in the assault.

161.  Defendant John Doe Nurses had the opportunity to prevent the physical assault of Plaintiffs, but left the room and told the Defendant Officers they would cover for them.

162.  These Defendants were acting with deliberate indifference, recklessness, gross negligence, intent, and/or knowledge to the above described acts being inflicted upon Plaintiffs, and as such, were the proximate cause of the injuries and harm suffered by Plaintiffs.

163. The foregoing conduct by these Defendants itself amounted to a constitutional violation of Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution.

164. As a direct and proximate result of these individual Defendants' willful violation of Plaintiffs' constitutionally protected rights, Plaintiffs have suffered and will continue to suffer damage into the future, including but not limited to, physical pain and suffering, mental anguish, severe emotion distress, fright and shock, and costs and attorney fees.

## COUNT IX
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Eighth Amendment – Deliberate Indifference to Serious Medical Needs)

### (Pugh Against Defendant John Doe Nurses)

165. Plaintiffs incorporate herein all prior allegations.

166. At all times relevant, Mr. Pugh had a clearly established right under the Eighth Amendment to the United States Constitution to be free from deliberate indifference to his known serious medical needs.

167. At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

168. After Mr. Pugh was physically assaulted by Defendant John Doe Corrections Officers, he requested medical care again for his previously complained of condition of chest pain as well as the newly inflicted injuries from Defendant Officers.

169.  Defendant Nurses denied him medical treatment for his serious medical needs.

170.  Defendants actions and inactions constituted deliberate indifference to Mr. Pugh's serious medical need in violation of 42 U.S.C. § 1983 and his rights under the Eighth Amendment to the United States constitution to be free from cruel and unusual punishment and deliberate indifference to medical needs.

171.  As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff Pugh was harmed and suffered damages for his physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT X
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Conspiracy to Deprive of Rights)

### (Pugh Against Defendants John Doe Correction Officers and John Doe Nurses)

172.  Plaintiffs incorporate herein all prior allegations.

173.  At all times relevant, Mr. Pugh had a clearly established right to be free from conspiracy to violate his constitutional right to be free from bodily harm and his right to medical care for serious medical needs.

174.  At all times relevant herein, Defendants were acting under the color of law and were required to obey the laws of the United States.

175.  Defendants John Doe Correction Officers and John Doe Nurses agreed to permit the unlawful physical assault on Mr. Pugh in the infirmary.

176.  Defendants John Doe Correction Officers agreed to physically assault Plaintiffs and agreed not to intervene or stop each other from beating Mr. Pugh.

25

177. Defendants John Doe Nurses agreed with Defendant Officers to permit and cover up the physical assault of Mr. Pugh when they said they would "cover for ya'll [sic]" and said, "we are going to leave the room," as Defendant Officers physically assaulted Plaintiff.

178. Defendant John Doe Nurses agreed amongst themselves not to provide Mr. Pugh with medical care.

179. Defendants actions and inactions constitute an impermissible conspiracy to deprive an individual of his right to be free from bodily harm and to exhibit deliberate indifference to medical needs in violation of 42 U.S.C § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution.

180. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiff Pugh was harmed and suffered damages for his physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT XI
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (Supervisory Individual Liability)

### (Against Defendant Warden)

181. Plaintiffs incorporate herein all prior factual allegations.

182. A supervisor is individually liable under 42 U.S.C § 1983 if the supervisor implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate or directly participated.

183. At all times relevant to this complaint, Defendant Warden was a warden and supervisor acting under the color of law in his/her actions and omissions and at

least implicitly approved, authorized or acquiesced in the unconstitutional conduct exhibited by his/her subordinate defendants named herein. All of the individually named Defendants were acting under the direct supervision of Defendant Warden. Defendant Warden established policies for his/her subordinates to follow which permitted the Defendant Officers to carry out the constitutional violations described herein.

184. At all times relevant to this complaint, Defendant Warden was responsible for the supervision, discipline, and control of all Southern Ohio Correctional Facility correctional officers who unlawfully violated Plaintiffs' constitutional rights, yet he/she at least implicitly approved, authorized, or acquiesced in his/her subordinates' misconduct.

185. As described herein, Southern Ohio Correctional Facility correctional guards violated Plaintiffs' clearly established right to personal safety and bodily integrity when they failed to protect him from a known and violent threat.

186. As described herein, Defendant Warden had knowledge that a particular inmate was a dangerous and violent threat to others in the facility as he had been caught with knives and shanks on several previous locations and had stabbed and attempted to stab inmates and guards in the past.

187. Despite his knowledge of a threat to inmate safety, Defendant Warden did not train and supervise Defendant Officers on dealing with inmates who pose a threat to other inmates' safety.

188. As a result of Defendant Wardens actions and inactions, he exhibited deliberate indifference to Plaintiffs' constitutional rights in violation of 42 U.S.C. §

1983 and his rights under the Eighth and Fourteenth Amendments to the United States Constitution.

189. As a proximate result of the illegal and unconstitutional acts of the Defendants, Plaintiffs were harmed and suffered damages for his physical, mental, emotional injury and pain, mental anguish, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Shamieke D. Pugh and Maurice D. Lee, demand judgment and prays for the following relief, jointly and severally, against all Defendants:

  a.  Full and fair compensatory damages in an amount to be determined by a jury;

  b.  Punitive damages in an amount to be determined by a jury;

  c.  Reasonable attorney's fees and costs of this action; and

  d.  Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiffs hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

Dated: April 3, 2019        By: */s/ Sean L. Walton*_____
                            Sean L. Walton, Esq. (#0088401)
                            Attorney for Plaintiffs
                            395 E. Broad St., Suite 200
                            Columbus, OH 43215
                            (614) 636-3476

28

By: */s/ Solomon M. Radner*_____
      Solomon M. Radner, Esq.
      (*pro hac vice to be applied for*)
      Attorney for Plaintiffs
      26700 Lahser Road, Suite 401
      Southfield, MI 48033
      (866) 939-2656

By:    */s/ Joseph D. Lento*_____
      Joseph D. Lento, Esq.
      (*pro hac vice to be applied for*)
      Attorney for Plaintiffs
      1500 Market Street - 12th Flr, East Tower
      Philadelphia, PA. 19102
      (267) 833-0200