UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SHAMIEKE D. PUGH, et al.,

    Plaintiffs,

  v.

RONALD ERDOS, et al.,

    Defendants.

Case No. 1:19-cv-245
JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

This case involves a brutal stabbing at the Southern Ohio Correctional Facility ("SOCF"). An inmate who had been handcuffed to a table in an indoor recreation area escaped his handcuffs; he then used two large knives to attack four other inmates handcuffed to a nearby table. Two of the victims have now sued for the injuries they suffered in that attack. They do not sue the perpetrator, though. Rather, they bring § 1983 claims against various correctional officers and other prison personnel.

The motion at issue here arises from Plaintiffs' decision to file an Amended Complaint (Doc. 27) adding a host of new correctional officers to the case. Those new officers, to whom the Amended Complaint refers collectively as either Defendant Officers (some eighteen of the new defendants) or Defendant Supervisors (four of the new defendants) (*see id*. at #225[1], 226), have now moved for judgment on the pleadings. (Doc. 49). The gist of the argument is that the Amended Complaint fails to allege that these individuals played any role in the events, and thus fails to make out

---

[1] Refers to PageID#.

a plausible claim against them. For the reasons discussed below, the Court **DENIES** the motion.

## BACKGROUND

As this case comes before the Court on a motion for judgment on the pleadings, the Court generally must accept as true the allegations set forth in the Amended Complaint. The Court thus relies on those allegations in reporting the events here, but does so with the caveat that these "facts" have not yet been, and may never be, proven.

With that said, the Amended Complaint alleges that, on June 4, 2017, Plaintiffs Pugh and Lee, who are African American (which becomes relevant for reasons noted below), were sitting handcuffed to a table in an indoor recreational area at SOCF. (Doc. 27, #227–28). They were seated with two other inmates, and the four were playing a card game. (*Id.* at #228). They further allege that, as a general matter, inmates are subject to a strip search in their cells before they are allowed to enter the indoor recreational area, and that they themselves were subjected to such a search on that day. (*Id.* at #227).

Shortly after they began playing cards, officers handcuffed another inmate, Gregory Reinke, to a nearby table. (*Id.* at #228). According to the Amended Complaint, Reinke is "a known white supremacist and member of the Aryan Brotherhood gang." (*Id.*). Plaintiffs allege that two corrections officers (Faye and Dalton, who are *not* included in the group "Defendant Officers" in the Amended Complaint, but are rather discussed separately in that pleading) did not perform a

strip search on Reinke. (*Id.*). To the contrary, they allegedly instead gave him a key or some other device that he could use to quickly unlock his handcuffs. (*Id.*).

Thus equipped, Reinke escaped from his handcuffs. He then proceeded to remove an eight-inch blade and a twelve-inch blade from his sock. Armed with those knives, he attacked Pugh, Lee, and the other two inmates seated with them. He stabbed Pugh "at least ten times" and Lee "at least twice." (*Id.* at #229).

The allegations expressly directed toward the Defendant Officers and Defendant Supervisors are limited. These allegations include: (1) that the officers in these two groups "were standing ten feet away behind a locked door when the stabbing took place"; (2) that they "saw the stabbing but did not immediately respond"; and (3) that instead of responding, the officers in these two groups allegedly "laughed as Mr. Pugh, Mr. Lee, and the other inmates were stabbed by Reinke." (*Id.* at #229–30).

Beyond that, deciphering the Complaint is a little trickier. In the Complaint's factual allegations, the only other meaningful allegations involving any officers included in these two groups is that one unidentified member of the Defendant Supervisors "did not provide any first aid or direct any other else [sic] on the scene to provide first aid," and instead "attempted to prevent and deny Plaintiffs from receiving any medical attention." (*Id.* at #230–31). In fact, one of the Defendant Supervisors (presumably the same one, but the Amended Complaint does not confirm that) allegedly said "we should just let them die." (*Id.* at #231).

3

In the portion of the Complaint setting forth the various counts, though, things change a little on this front. There, the Amended Complaint alleges that all of "Defendant Officers, Defendant Supervisors, Defendant Faye and Defendant Dalton were on the scene after Plaintiffs had been stabbed but provided no first aid or medical treatment whatsoever." (*Id.* at #237).

The Amended Complaint then goes on to describe a separate incident involving Plaintiff Pugh that allegedly occurred in 2018. The allegations involving that incident are confusing, however, as the Amended Complaint continues to make use, at least in part, of the labels "John Doe Correctional Officers" and "John Doe Officers," which are holdovers from a previous version of the Complaint. (*See id.* at #233; Compl., Doc. 1, #2, 11). That earlier version of the Complaint had named, and directed allegations against, a number of unidentified correctional officers, which it referred to collectively as "John Doe Correctional Officers." So far as the Court can tell, though, there are no longer any unidentified correctional officers named as parties, so the Court is unclear as to who is included in the groups "John Doe Correctional Officers" or "John Doe Officers," and how that group membership compares to "Defendant Officers."

That confusion aside, based on these allegations, the Amended Complaint asserts ten causes of action under § 1983. As the instant motion concerns only the Defendant Officers and the Defendant Supervisors, the Court will limit its discussion to those counts asserted against one or both of these groups. These counts include: (1) an Eighth Amendment failure to protect claim, which Plaintiffs assert against, inter alia, Defendant Supervisors (Count I); (2) an Eighth Amendment deliberate

4

indifference to serious medical needs claim, which Plaintiffs assert against, inter alia, the Defendant Officers and the Defendant Supervisors (Count II); (3) a supervisory liability claim against Defendant Supervisors (Count III); and (4) a conspiracy claim, which the Amended Complaint says it is directing toward two named defendants and the Defendant Supervisors, but which includes a paragraph directed at "Defendant Officers" (Count V). Beyond that, the Complaint has three other claims based on Pugh's 2018 incident (Counts VII, VIII, and X), that it says it is asserting against "John Doe Corrections Officers," a label the Court does not understand fully, but which does not appear to be synonymous with "Defendant Officers."

A few months after Plaintiffs filed their Amended Complaint, the newly identified officers answered. (Doc. 35). The matter is now before the Court because, in addition to answering, the newly-identified officers (collectively the Defendant Officers and the Defendant Supervisors) have moved for judgment on the pleadings. (Doc. 49). According to these Defendants, while the Amended Complaint *names* them as parties, it does not actually *allege* that they did anything wrong. To be sure, the Amended Complaint does allege things that other specified officers did or did not do. But these specifically identified officers are not included in either the groups "Defendant Officers" or "Defendant Supervisors." And the few allegations that are directed against the officers in these groups are stated in collective terms. According to the moving Defendants, those scant allegations, stated at that level of generality, are not sufficient to meet the plausibility threshold that *Twombly* requires. The matter is now fully briefed.

5

## LEGAL STANDARDS

"For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Newell v. Cent. Michigan Univ. Bd. of Trustees*, No. 20-1864, 2021 WL 3929220, at *5 (6th Cir. Sept. 2, 2021) (quoting *Jackson v. Prof'l Radiology Inc.*, 864 F.3d 463, 466 (6th Cir. 2017) (citation omitted)). But the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Jackson*, 864 F.3d at 463 (cleaned up)). "A Rule 12(c) motion is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Id.* (quoting *Jackson*, 864 F.3d at 463 (cleaned up)).

Of course, when deciding whether a party is "entitled to judgment as a matter of law," the substantive elements of the underlying claim matter. Here, Plaintiffs sue under § 1983. "To state a claim under 42 U.S.C. § 1983, a plaintiff must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Id.* at *5 (quoting *Marvin v. City of Taylor*, 509 F.3d 234, 243 (6th Cir. 2007)).

## LAW AND ANALYSIS

The instant dispute resides at the confluence of federal pleading standards and substantive § 1983 law. The former requires a litigant to allege, at the pleading stage, a claim that rises at least to the level of plausibility. And the latter says that, to do

6

so in the context of a § 1983 action, the allegations must suffice to show that each named defendant is plausibly liable for violating rights secured by the Constitution (or other federal law) that resulted in injury to the plaintiff. The question is whether the Amended Complaint includes sufficient allegations to satisfy that dual threshold as to the Defendant Officers and the Defendant Supervisors. The Court concludes that the Amended Complaint clears that hurdle, if barely.

No one disputes that, to move beyond the pleading stage, a plaintiff must be able to show that his or her claim is plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Supreme Court put it, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Rather, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* And the label that the Supreme Court uses to refer to "above the speculative level" is "plausibility." *Id.* at 556. Importantly, plausibility does not mean probability. Rather, "'plausibility' occupies that wide space between 'possibility' and 'probability.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). To satisfy the plausibility standard, a complaint "must allege sufficient 'factual content' from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that the plaintiff could succeed on his or her claims. *Id.* (quoting *Iqbal*, 566 U.S. at 678, 679).

7

Likewise, there is little dispute regarding the elements of a § 1983 claim. As relevant here, the Plaintiffs ultimately must establish that a person, acting under color of state law, transgressed one or more of their constitutional rights. Of course, there is little question that the Defendant Supervisors and Defendant Officers act under color of state law in their interactions with incarcerated persons such as Plaintiffs. The remaining question, then, is the existence of a constitutional violation.

For their claims here, Plaintiffs rely on the Eighth Amendment, and, in particular, two categories of Eighth Amendment claims—failure to protect (asserted against the Defendant Supervisors), and a deliberate indifference to serious medical needs (asserted against both Defendant Supervisors and Defendant Officers). As to the first, it is well settled that the Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833 (1994) (quotation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. Rather, to state an Eighth Amendment claim for failure to protect, a plaintiff must show that prison officials acted with deliberate indifference to a substantial risk of serious harm. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 834). And, as with many Eighth Amendment claims, that showing has both an objective and a subjective component. That is, a plaintiff must show: (1) that he was incarcerated under conditions that posed a serious risk of harm (the objective

8

prong); and (2) the official knew of this serious risk but failed to take reasonable steps to abate it (the subjective prong). *Id.*

Beyond an obligation to protect prisoners, the Eighth Amendment also imposes other duties to ensure humane conditions of confinement. *Farmer*, 511 U.S. at 833. These duties include an obligation for corrections officers to ensure that incarcerated persons receive timely and appropriate medical care for serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 103–04 (1976). As is the case with failure to protect, though, not every failure to provide medical treatment results in liability. Instead, "the Eighth Amendment prohibits mistreatment only if it is tantamount to 'punishment,'" and courts therefore impose liability only when jail officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez v. Oakland Cnty.*, 466 F.3d 416, 423 (6th Cir. 2006) (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)).

The Court's task here, then, is to determine whether the allegations against the Defendant Officers and the Defendant Supervisors suffice to show a plausible claim when measured against the substantive elements of the § 1983 claims at issue. The Court starts its analysis of that question with a preliminary observation—the way the moving defendants have framed the issue in their briefing, the Court need only determine whether, as to each of the two groups (Defendant Officers and Defendant Supervisors), there is at least one claim in the Complaint that meets the requisite standards. That is because the Defendant Officers and Defendant Supervisors did not tailor their arguments to any specific claims. For example, as

9

noted above, at least with regard to the 2018 incident involving Mr. Pugh (i.e., the non-knifing incident), there are some allegations that are arguably directed at the group "John Doe Correctional Officers," but in later allegations in the same count, the term "Defendant Officers" is used. The Defendant Officers could have argued that, as to those claims, there is such confusion as to who did what, or even who is included in what group, that judgment on the pleadings is warranted as to those claims. But Defendants Officers made no such argument in their briefing, so the Court will not consider that argument here.

      The argument that Defendant Officers and Defendant Supervisors *did* make, though, is that there are not enough allegations in the Amended Complaint to state *any* claim against them when measured against the standards above. So, how does that argument fare? Stated favorably to the Plaintiffs, as the Court must do when assessing a motion for judgment on the pleadings, the Amended Complaint alleges that, while Reinke was brutally stabbing Plaintiffs, the Defendant Officers and the Defendant Supervisors stood passively behind a locked door and made no move to help, instead laughing at the Plaintiffs' plight while Plaintiffs were being stabbed. That seems to raise a plausible claim that the Defendant Officers and Defendant Supervisors violated the Eighth Amendment. More specifically, failing to intervene to protect one prisoner from a knife attack by another, and laughing while the victim suffers an assault, plausibly sounds in "deliberate indifference." The objective risk of harm (stab wounds) is substantial, and passively standing by while laughing—

10

assuming that in fact happened, as the Court must at this stage—seems to raise at least a plausible inference that Plaintiffs could meet the subjective prong.

To be sure, one could quibble that the claims against the Defendant Officers should be labeled "failure to protect" (which is asserted only against Defendant Supervisors), rather than "deliberate indifference to serious medical needs." (*See* Am. Compl., Doc. 27, #234–37). But, in fairness, the Amended Complaint also goes on to allege that the Defendant Officers "were on the scene after Plaintiffs had been stabbed but provided no first aid or medical treatment whatsoever." (*Id*. at #237). If true, that may suffice to substantiate a deliberate indifference to serious medical needs claim.

At the risk of unwarranted repetition, the Court again notes that Plaintiffs' allegations are just that—allegations. Plaintiffs have yet to prove that any of their allegations are true. But that is not the question at this juncture. Rather, the question here is merely whether, assuming the allegations are true, Plaintiffs have raised "beyond the speculative level" their claims that the Defendant Officers and the Defendant Supervisors violated the Constitution. While Plaintiffs admittedly do not offer a lot in that regard, what they do offer suffices for the reasons described above. Of course, if Plaintiffs cannot prove those allegations, each of these defendants may be entitled to summary judgment (and if the Plaintiffs lacked a good-faith basis for their claim that any one or more of the officers in the Defendant Officers or Defendant Supervisors groups were actually present and involved, sanctions may even be warranted). But that is a question for another day.

11

The Defendant Officers and Defendant Supervisors claim otherwise, but their arguments fail to convince. The entirety of their argument essentially boils down to various versions of this: "[i]t is well-settled that to state a cognizable 1983 civil rights claim, the plaintiff must allege some personal involvement by each of the named defendants." (Mot. for J. on the Pleadings, Doc. 49, #443). While they repeat that same basic principle in a variety of guises throughout their briefing, and while that principle may well be true, the Court fails to see how that principle advances their argument here. The moving defendants appear to interpret this principle to mean that each individual, and that particular individual's conduct, must be separately and specifically described by name in the body of the complaint. So, for example, it appears that the moving defendants are contending that a complaint could not aver that "three officers stood outside the door." Rather, the complaint presumably must say something like "Officer Prater, Officer Lauder, and Officer Baker stood outside the door."

The Court does not agree with that view. If a complaint defines a group of individuals, and then alleges that "the group performed act A," the natural reading of that phrase would be that "each member included in the defined group performed act A." As relevant here, for example, the Amended Complaint alleges that "the Defendant Officers" stood outside, watching events unfold and laughing. The Court understands that to be an allegation that all members of that group were present, passively standing by, and laughing, rather than making any effort to intervene. That makes out a plausible claim of an Eighth Amendment violation. Ultimately, as the

12

expression goes, the proof will be in the pudding, but at least for now, the Plaintiffs are entitled to move forward with this case as to the Defendant Officers and the Defendant Supervisors.

## CONCLUSION

For the reasons above, the Court **DENIES** the Defendant Officers' and Defendant Supervisors' Motion for Judgment on the Pleadings (Doc. 49).

**SO ORDERED.**

October 28, 2021
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**